UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 06-26-1 (JNE/FLN)

          Plaintiff,

    v.                                                      **REPORT AND RECOMMENDATION**

Veronica Matus Garcia,

          Defendant.

_____

Christian Wilton, Assistant United States Attorney, for Plaintiff.
Larry Reed, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on February 22, 2006, on Defendant's Motions to Suppress Confessions [#24]; to Suppress the Contents of Any Intercepted Wire or Oral Communications [#32]; to Suppress Evidence Derived from Intercepted Wire or Oral Communications [#33]; and on Defendant's oral Motion to Dismiss Count I of the Indictment.  After the hearing, Defendant also filed a Motion for a Bill of Particulars [#39].  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons that follow, this Court recommends Defendant's Motions be granted in part.

## I.  FINDINGS OF FACT

Defendant Veronica Matus Garcia has been indicted with Distribution of Methamphetamine and Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 18 U.S.C. section 2, and 21 U.S.C. sections 841 and 846.  See Indictment [#1].

A.      **Testimony of Brian Stroshane**

Brian Stroshane testified for the Government at the hearing on February 22, 2006.  He stated that he had been employed with the Oakdale Police Department for approximately five years.  He testified that as a general investigator with the Oakdale Narcotics Task Force he was familiar with Defendant's case.

Officer Stroshane testified that he interviewed Defendant on January 30, 2006, in an interview room at the Washington County Jail in Stillwater, Minnesota.  Stroshane stated that Defendant had been arrested that morning.  Another officer was present during the interview.  Both officers were dressed casually.  Officer Stroshane stated that he was armed, but that his handgun was concealed under his shirt throughout the interview.

Stroshane stated that he introduced himself to as an officer on the drug task force.  He testified that he read Defendant her <u>Miranda</u> rights from a card he carried.  He stated that he told her she had the right to remain silent, that anything she said could be used against her in court, that she had the right to an attorney, and that if she could not afford an attorney one would be appointed, that she could end the questioning at any time.[1]  He testified that Defendant stated that she understood her rights and was willing to talk to the officers.

Officer Stroshane stated that the interview lasted 30-40 minutes.  He stated that Defendant never asked for an attorney or indicated that she wished to stop talking.  He characterized the

---

[1]When the officer first testified about reading Defendant her rights, he testified that he read them from a card.  In Court he did not refer to his card and recited from memory the <u>Miranda</u> rights.  In so doing, he neglected to mention the right to have counsel appointed.  Later in his testimony, when again asked to elaborate upon the reading of the <u>Miranda</u> rights, he testified he did tell Defendant about her right to appointed counsel.  The Court concludes that Defendant was given the full <u>Miranda</u> warning, which Officer Stroshane read to her from a card.

interview as a "normal conversation," and stated that neither he nor Defendant raised their voices at any time.  Defendant's responses were appropriate to the questions Officer Stroshane asked.  Stroshane stated that Defendant did not appear to be under the influence of drugs or alcohol.  She did not ask for anything during the interview.  Stroshane stated that he never lied, threatened, or promised anything to Defendant.  He stated that Defendant may have cried during the interview, but that she did not appear intimidated.

Officer Stroshane testified that he knew that Defendant was involved with methamphetamine, and that Defendant stated during the interview that she was a user of methamphetamine.  He stated that Defendant never told him that she smoked before her arrest on the morning of the interview.       Officer Stroshane stated that he attempted to make an audio and visual recording of the interview, but that the tape malfunctioned and the interview was not recorded.

**B.     Testimony of Defendant Garcia**

Defendant testified at the hearing.  She stated that she was arrested on January 30, 2006, and that Officer Stroshane interviewed her at the Washington County Jail later that day.  She testified that he read her <u>Miranda</u> rights.  She testified that she understood what was happening during the interview and the questions asked of her, and that she could have stopped the interview at any time.  She stated that the officers never yelled or showed their weapons.

She stated that she cried throughout the interview, and that Officer Stroshane told her she was facing a long prison time.  She testified that Stroshane asked her age, to which she replied, "forty."  Stroshane then told her that she would be 53 years old before she was out of prison.  Defendant testified that she told Officer Stroshane that she was under the influence of drugs during

the interview.  She stated that Stroshane asked her to work with the officers and to give him names of people with whom she was involved in the distribution of methamphetamine.  She stated that she answered his questions because she was scared.  She stated that the officers laughed at her during the interview.

### C.      Rebuttal Testimony of Brian Stroshane

On rebuttal, Officer Stroshane testified that he never threatened Defendant with prison time, asked her age, or told her to get a lawyer during the interview.  He stated that he never laughed at Defendant, but that he may have laughed during the interview.  He testified that he spoke with Defendant about working with him and the other officers, and may have said that usually people who cooperate with an investigation are shown leniency.  He stated that he gave her his card so that she could call him if she wanted to work with him.

### D.      Testimony of Bill Murphy

Bill Murphy testified for the Government at the hearing.  He stated that he had been a DEA agent since 1996.  He stated that during the investigation of Defendant, he was involved as an undercover agent in buys using a confidential informant ("CI").  Murphy stated that the CI created an audio recording of the buys, and that the CI consented to being recorded during the buys. Murphy stated that he also consented to being recorded.

Murphy stated that he also taped some conversations with the CI, and that the recorder he wore may have picked up some ambient noise, including some conversations between Defendant and others.  Murphy testified that Defendant did not consent to being recorded.

### E.      Defendant's Motions

Defendant moves to suppress the statements she made during the interview on January 30,

2006 [#23], and to suppress the contents of any intercepted wire or oral communications, and any evidence derived therefrom [#32; #33]. At the hearing, Defendant moved orally to dismiss Count I of the Indictment (the conspiracy charge). The Court received post-hearing memorandums on Defendant's motion to dismiss Count I. After the hearing, Defendant also moved for a bill of particulars [#39].

## II.  LEGAL ANALYSIS

### A.    Defendant's Statements Are Admissible

### 1.    Defendant Waived Her <u>Miranda</u> Rights

Defendant moves to suppress the statements she made during the interview on January 30, 2006. To protect the rights guaranteed by the Fifth Amendment, the Supreme Court adopted the <u>Miranda</u> rules to be followed during custodial interrogations. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444-45 (1966). A suspect in custody must be warned that he has "a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." <u>Id.</u> Officers must explain these rights to a suspect before questioning begins. <u>See</u> <u>id.</u> at 469-70. Statements elicited from a suspect in violation of <u>Miranda</u> are inadmissible. <u>See</u> <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994). After the warnings have been given, if the suspect indicates in any manner at any time during questioning that he wishes to remain silent or that he wants an attorney, the interrogation must cease. <u>See</u> <u>Miranda</u>, 384 U.S. at 473-74.

After the reading of the <u>Miranda</u> warnings, a suspect's waiver of the Fifth Amendment privilege against self incrimination is only valid if it is made voluntarily, knowingly, and intelligently. <u>See</u> <u>Miranda</u>, 384 U.S. at 444; <u>United States v. Syslo</u>, 303 F.3d 860, 866 (8th Cir. 2002). A waiver is knowing if it is "made with a full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986).  It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." <u>Id.</u>

Here, Defendant was unquestionably in custody during the interview on January 30, 2006, and thus she was entitled to appropriate <u>Miranda</u> warnings.  Officer Stroshane instructed Defendant of her <u>Miranda</u> rights before he initiated the interview.  He told her she had the right to remain silent, that anything she could say could be used against her, that she had the right to an attorney, and that she could stop the questioning at any time.  Officer Stroshane testified that Defendant stated she understood her rights and indicated she was willing to answer questions.  The warning Defendant received reasonably conveyed her constitutional rights as required by <u>Miranda</u>.  <u>See</u> <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004).  Defendant concedes that she was informed of her rights, and that she expressly agreed to answer the officers' questions.  The Court finds Defendant understood the <u>Miranda</u> warning as it was explained to her.

The Court also finds that Defendant's waiver of her <u>Miranda</u> rights was made voluntarily. Though Defendant may have been scared during the interview, the Court is not convinced that she was so upset and intimidated that her waiver was coerced or resulted from deceptive police tactics. <u>See</u> <u>Colorado v. Spring</u>, 479 U.S. 564, 573-74 (1987).  Her behavior during the interview does not lead the Court to conclude that her will was overborne.  Her answers were responsive to the questions posed by the officers, and she never requested to end the interview or asked for an attorney. The Court finds that Officer Stroshane's conduct in interviewing Defendant complied with the requirements set forth in <u>Miranda</u>, and that Defendant validly waived her <u>Miranda</u> rights before giving her statements.

### 2.      Defendant's Statements Were Voluntary

Next, the Court must determine whether Defendant's statements were made involuntarily. A statement or confession that is involuntarily made by a suspect is violative of his or her due process rights.  See Haynes v. Washington, 373 U.S. 503, 513-14 (1963); United States v. Kime, 99 F.3d 870, 878-79 (8th Cir. 1996).  If the statements are induced by threats, promises, or in any other way in which the suspect's will is overborne, the statements are not voluntary and are inadmissible. See Haynes, 373 U.S. at 513.  The voluntariness inquiry centers upon: (1) the conduct of law enforcement officials in creating pressure; and (2) the suspect's capacity to resist that pressure.  See Mincey v. Arizona, 437 U.S. 385, 399-401 (1978) (confession involuntary when continued police interrogation of hospitalized suspect overwhelmed suspect's free will); Davis v. North Carolina, 384 U.S. 737, 752 (1966) (confession involuntary when police repeatedly interrogated jailed suspect held incommunicado over 16-day period).  Coercion by a state actor is a necessary element in satisfying this test.  See Colorado v. Connelly, 479 U.S. 157 (1986).

Defendant alleges that during the interview Officer Stroshane stated that she was facing a long prison time and that if she cooperated with the investigation, she might receive a lesser sentence.  The Court finds that these comments are not so coercive as to deprive Defendant of her ability to make an unconstrained decision to speak to the officers.  See United States v. Astello, 241 F.3d 965, 967 (8th Cir. 2001) ("interrogation of a suspect will involve some pressure because its purpose is to elicit a confession"); United States v. LeBrun, 306 F.3d 545, 555 (8th Cir. 2002) ("there is nothing inherently wrong with efforts to create a favorable climate for confession").  Questioning tactics such as raised voice, deception, or a sympathetic attitude will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be

-7-

overborne.  Astello, 241 F.3d at 967.  Nor will a promise of leniency necessarily render a confession involuntary.  Wilson v. Lawrence County, 260 F.3d 946, 953 (8th Cir. 2001).  Rather, the coercive conduct must be such that the defendant's will was overborne and his capacity for self-determination critically impaired.  Astello, 241 F.3d at 967.

To determine whether a confession or statement is voluntary or the product of undue coercion, a court must assess the totality of the circumstances to determine whether pressures exerted by the authorities overwhelmed the defendant's will.  Id; United States v. Rodriguez-Hernandez, 353 F.3d 632, 636 (8th Cir. 2003).  Here, considering all the circumstances, the Court concludes Defendant voluntarily made her statements.  Defendant was advised of her Miranda rights.  The interview, which lasted only about a half hour, took place while Defendant was in custody at the county jail.  Defendant had been in custody for less than 24 hours and did not request food, drink or medications during the interview.  Officer Stroshane neither threatened nor promised Defendant anything.  Though, according to Defendant, he stated she was facing a lot of prison time, and that if she cooperated she might receive a lesser sentence, Officer Stroshane did not exert undue pressure on Defendant.  See United States v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002) ("telling [the] defendant in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed decision with respect to [his] cooperation with the government") (quoting United States v. Nash, 910 F.2d 749, 753 (11th Cir. 1990)).

Though Defendant was crying during the interview, and was understandably scared and upset, the record does not suggest that her will was overborne.  Defendant answered the officers' questions during the interview, and testified that she understood that she did not have to talk to the

police and that she could stop the questioning at any time. Her demeanor and behavior during the interview was not the conduct of a person whose will has been overborne or whose capacity for self-determination has been critically impaired. See Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001). Defendant's statements on January 30 were made voluntarily after she received proper Miranda warnings. The statements were not taken in violation of the Fourth or Fifth Amendments and they are admissible. Her motion to suppress statements should be denied.

**B.      Some of the Intercepted Oral and Wire Communications, and Evidence Derived Therefrom, Should Be Suppressed**

Defendant moves to suppress the contents of all wire or oral communications intercepted by the Government, and any evidence derived therefrom, on the ground that the communications were unlawfully intercepted. Specifically, Defendant moves to suppress the statements recorded by Special Agent Murphy and the CI.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, tightly regulates the use of wiretaps and other electronic surveillance by both government agents and private citizens. Title III prohibits all interceptions of electronic communications not specifically authorized by its own provisions. 18 U.S.C. § 2511(1)(a). Section 2511(2)(c) provides an exception for a person acting under color of law if one of the parties to the communication has given prior consent to the interception of the communication. See United States v. Jones, 801 F.2d 304, 315 (8th Cir. 1986). No warrant is required when one participant consents to the recording of the conversation because no interest legitimately protected by the Fourth Amendment is involved. Hoffa v. United States, 385 U.S. 293 (1966); see also United States v. White, 401 U.S. 745, 751-53 (1971).

Here, Special Agent Murphy and the CI wore wires and consented to the recording of the

conversations they had with Defendant and others during the investigation.  To the extent the wires

recorded the conversations Murphy and the CI had with others, the conversations are admissible

under the consent exception in section 2511(2)(c).  Defendant's motion to suppress the interception

of such conversations should be denied.

To the extent, however, that the wires recorded conversations between Defendant and people

other than Agent Murphy or the CI, the conversations are not admissible.  Section 2511(2)(c) only

excludes from the coverage of Title III, interceptions where "one of the parties to the communication

has given prior consent."  That the CI and/or Agent Murphy might have been in a position to

overhear Defendant's end of a telephone conversation with a third party, does not make the CI or

Agent Murphy a "party to that conversation."  The Defendant did not consent to the interception of

her conversations with third parties that did not include Agent Murphy or the CI.  The interception

of those conversations is impermissible under Title III, and any conversations the CI or Agent

Murphy overheard, to which they were not a party, must be suppressed.

### C.    Defendant's Motion to Dismiss Count I Should Be Denied

In Count I of the Indictment, the Government alleges that

> From on our about June 1, 2005, through on or about January 23, 2006, in the State
> and District of Minnesota and elsewhere, the defendants, Veronica Matus Garcia and
> Anthony Montes knowingly conspired with each other and other persons, whose
> names are known and unknown to the grand jury, to distribute and to possess with
> intent to distribute...methamphetamine.

Defendant argues that because the second alleged coconspirator, Defendant Montes, has been

dismissed from the case, the Government must dismiss the Count of conspiracy alleged against her.

See Def. Mem. p. 1 [#38].  Defendant argues that the count of conspiracy fails because the

Government cannot provide evidence that she entered into an agreement with at least one other

-10-

person and that the agreement had as its objective a violation of law.  See Def. Mem. p. 1, citing

United States v. Robinson, 217 F.3d 560, 564 (8th Cir. 2000).

It is true that an individual cannot be convicted for conspiring with herself, and that where

all other alleged coconspirators are acquitted, the conviction of one person for conspiracy will not

be upheld.  United States v. Bell, 651 F.2d 1255, 1258 (8th Cir. 1981) (citing United States v. Moss,

591 F.2d 428, 434 (8th Cir. 1979); United States v. Phillips, 630 F.2d 1138, 1146 (6th Cir. 1980)).

In this case, however, the Government has provided evidence that other individuals "known and

unknown to the grand jury," were involved in the conspiracy.  Specifically, the Government alleges

that on October 25, 2005, Defendant spoke via telephone to the "source" of the methamphetamine,

and that later that day, the "source's" cousin delivered methamphetamine to Defendant's residence.

The Government submits that they have been unable to identify the individual who delivered the

methamphetamine to Defendant on that day.  See Def. Res. Mem. [#40] p. 2-3.

Under these circumstances, a dismissal of the conspiracy charge against this Defendant is

unwarranted.  In Bell, the Eighth Circuit held that "if the indictment names persons unknown as

coconspirators, and there is evidence to support the charge that one of the two defendants conspired

with the unknown persons, his conviction can stand, even though the other defendant was acquitted."

Id., citing Cross v. United States, 392 F.2d 360, 362 (8th Cir. 1968); see also U.S. v. Mosquera, 779

F.2d 628, 630 (11th Cir.1986) (a defendant may be convicted of conspiring with "persons unknown,"

if sufficient evidence supports the existence and involvement of such unknown persons).  The

Indictment alleges that Defendant and other persons "known and unknown," were involved in a

conspiracy to distribute methamphetamine from on or about June 1, 2005, to January 23, 2006.  The

scope of the conspiracy covers a period of several months, and the Government has alleged that

other persons, "known and unknown to the grand jury," were involved in drug transactions with Defendant during that period. The grand jury has found probable cause to believe that Defendant has engaged in a conspiracy. A jury must decide at trial if the Government meets its burden of proof in establishing the conspiracy. Defendant's Motion to Dismiss Count I should be denied.

**D.     Defendant's Motion for a Bill of Particulars Should be Granted in Part**

In the event the Court recommended that her motion to dismiss the conspiracy charge be denied, Defendant moved the Court to compel the Government to file a bill of particulars setting forth the specifics of the alleged conspiracy. See [#39]. The Court concludes that Defendant's Motion for a Bill of Particulars should be granted to the extent it seeks to compel the Government to identify the "unindicted" coconspirators with whom Defendant conspired who are "known" to the grand jury. The Government should also identify the "unknown" coconspirators by their role or involvement in the conspiracy. In all other respects, Defendant's Motion should be denied.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motions be **granted** and **denied** as follows:

1)     Defendant's Motion to Suppress Confessions [#24] should be **DENIED.**

2)     Defendant's Motion to Suppress the Contents of Any Intercepted Wire or Oral Communications [#32] should be **GRANTED** to the extent it seeks to suppress the intercepted communications to which no party consented to the recording thereof. In all other respects, the Motion should be **DENIED.**

3)     Defendant's Motion to Suppress Evidence Derived from Intercepted Wire or Oral Communications [#33] should be **GRANTED** to the extent that it seeks to suppress evidence derived from intercepted communications to which no party consented to the recording thereof. In all other respects, the Motion should be **DENIED.**

4)     Defendant's oral Motion to Dismiss Count I of the Indictment should be **DENIED.**

5)   Defendant's Motion for a Bill of Particulars [#39] should be **GRANTED** to the extent it seeks to compel the Government to identify the "unindicted" coconspirators with whom Defendant conspired who are "known" to the grand jury, and to identify the "unknown" coconspirators by their role or involvement in the conspiracy.  In all other respects, the Motion should be **DENIED.**

DATED: March 27, 2006                                 s/ *Franklin L. Noel*
                                                                    FRANKLIN L. NOEL
                                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 12, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **April 12, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.